

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Northern Division*

---

*Rod J. Rosenstein*
*United States Attorney*

*Jefferson M. Gray*
*Assistant United States Attorney*

*36 South Charles Street*
*Fourth Floor*
*Baltimore, Maryland 21201*

*DIRECT: 410-209-4915*
*MAIN: 410-209-4800*
*FAX: 410-962-3091*
*TTY/TDD: 410-962-4462*
*Jefferson.M.Gray@usdoj.gov*

November 15, 2011

Mark E. Matthews, Esq.
Morgan Lewis & Bockius
1111 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2541

      Re:   *United States v. Christina Turley Knott*
              Crim. No. RDB-11-0267 (D. Md.)

Dear Counsel:

      This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have her execute it in the spaces provided below. If this offer has not been accepted by Tuesday, November 22, 2011, it will be deemed withdrawn. The terms of the agreement are as follows:

### Offenses of Conviction

      1.    The Defendant agrees to plead guilty to Counts One and Five of the Indictment now pending against her, which respectively charge her with Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1349, and Subscribing to a False Tax Return, in violation of 26 U.S.C. § 7206(1). The Defendant admits that she is, in fact, guilty of those offenses and will so advise the Court.

### Elements of the Offense

      2.    The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

### Conspiracy to Commit Wire Fraud
### 18 U.S.C. § 1349

- First, that two or more persons entered the unlawful agreement charged in the indictment; and

Mark E. Matthews, Esq.
November 15, 2011
Page 2

- Second, that the Defendant knowingly and willfully became a member of the conspiracy.

### Subscribing to a False Tax Return
### 26 U.S.C. § 7206(1)

- First, the defendant made and signed a tax return for the year 2004 that she knew contained false information as to a material matter;

- Second, the return contained a written declaration that it was being signed subject to the penalties of perjury; and

- Third, in filing the false tax return, the defendant acted willfully.

### Penalties

3. The maximum sentence provided by statute for the offenses to which the Defendant is pleading guilty are as follows: for the offense of Conspiracy to Commit Wire Fraud, twenty (20) years, plus a term of as much as three (3) years of supervised release, and a fine of up to $250,000.00; and for the offense of Subscribing to a False Tax Return, three years' imprisonment and a term of up to one year of supervised release, plus a fine of up to $250,000.00. In addition, the Defendant must pay $200.00 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order her to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if she serves a term of imprisonment, is released on supervised release, and then violates the conditions of her supervised release, her supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

---

[1] Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

Revised 11/5/09

Mark E. Matthews, Esq.
November 15, 2011
Page 3

## **Waiver of Rights**

4. The Defendant understands that by entering into this agreement, she surrenders certain rights as outlined below:

a. If the Defendant had persisted in her plea of not guilty, she would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in her defense, however, she would have the subpoena power of the Court to compel the witnesses to attend.

d. The Defendant would have the right to testify in her own defense if she so chose, and she would have the right to refuse to testify. If she chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from her decision not to testify.

e. If the Defendant were found guilty after a trial, she would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against her. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that she may have to answer the Court's questions both about the rights she is giving up and about the facts of her case. Any statements the Defendant makes during such a hearing

Mark E. Matthews, Esq.
November 15, 2011
Page 4

would not be admissible against her during a trial except in a criminal proceeding for perjury or false statement.

       g.    If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find her guilty.

       h.    By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if she is not a citizen of the United States, pleading guilty may have consequences with respect to her immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including her attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that she wants to plead guilty regardless of any potential immigration consequences.

### Advisory Sentencing Guidelines Apply

5.    The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

6.    This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto, which the Defendant agrees this Office would prove beyond a reasonable doubt if this matter were to proceed to trial, and to the following applicable sentencing guidelines factors:

> **Count One (18 U.S.C. § 1349):** The defendant's base offense level for the offense of Conspiracy to Commit Wire Fraud is a level **seven (7)**, pursuant to U.S.S.G. § 2B1.1(a)(1). **Fourteen (14)** levels are added pursuant to § 2B1.1(b)(1)(H) because the amount of the loss during the period when the Defendant was associated with the conspiracy was more than $900,000 but less than $1 million, for an adjusted total of **twenty-one (21)**. The parties disagree with regard to whether an additional two **(2)** level enhancement is merited because defendant Knott acted as an organizer, supervisor or manager in carrying out the misbilling fraud scheme. See ¶ 9 below.

Mark E. Matthews, Esq.
November 15, 2011
Page 5

**Count Five (26 U.S.C. § 7206(1)):** The parties agree that the defendant's base offense level for the offense of Subscribing to a False Tax Return is a level **twenty-two (22)**, pursuant to § 2T4.1(I). The amount of the tax loss ($469,360 for tax year 2003 and $572,937 for tax year 2004) is more than $1 million, based upon an applicable tax rate of 35%. The parties further agree that an additional **two (2)** levels are added because defendant Knott failed to report income exceeding $10,000 in both 2003 and 2004 that was derived from criminal activity, specifically, Bechdon's overbilling scheme against the NSA. This produces an adjusted offense level on the tax perjury charge of a **twenty-four (24).**

The two offenses are treated as closely related counts pursuant to U.S.S.G. § 3D1.2(c), because defendant Knott's guidelines on the tax count are enhanced as a result of conduct embodied in the fraud count. Pursuant to § 3D1.3, the offense level of the grouped counts is determined with reference to the offense level of the highest count or counts within that group, which in this case will be Count Five. As a result, defendant Knott's offense level before applying any reductions for acceptance of responsibility will be a **twenty-four (24)**.

This Office does not oppose a **two (2)** level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for her criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional **one (1)** level decrease in recognition of the Defendant's timely notification of her intention to plead guilty. This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about her involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw her plea of guilty.

7. The Defendant understands that there is no agreement as to her criminal history or criminal history category, and that her criminal history could alter her offense level if she is a career offender or if the instant offense was a part of a pattern of criminal conduct from which she derived a substantial portion of his income.

8. This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range and application of the 18 U.S.C. § 3553(a) factors, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines or in 18 U.S.C. § 3553(a) will be raised or are in dispute.

Mark E. Matthews, Esq.
November 15, 2011
Page 6

### Guidelines Factors Not Stipulated

9. This Office and the Defendant agree that the following facts and/or sentencing guidelines factors are in dispute:

The government maintains that defendant Knott should be subject to an additional **two (2)** level enhancement pursuant to U.S.S.G. § 3B1.1(c) because she acted as an organizer, supervisor or manager in carrying out the misbilling fraud scheme. The defense does not believe this enhancement is appropriate, and will contest it at sentencing. In any case, the resolution of this issue will not affect defendant Knott's ultimate Guidelines offense level.

With respect to the calculation of the advisory guidelines range and application of the 18 U.S.C. § 3553(a) factors, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines or in 18 U.S.C. § 3553(a) will be raised or are in dispute.

### Obligations of the United States Attorney's Office

10. At the time of sentencing, this Office will recommend that the defendant be sentenced at the lower end of the applicable guideline range, and that she pay a fine in the lower half of the applicable guideline range.

11. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct, including the conduct that is the subject of the counts of the Indictment that this Office has agreed to dismiss at sentencing.

### The Defendant's Civil Tax Obligations

12. The Defendant understands that this agreement does not resolve any personal civil tax liability that she may have, and that this agreement is with the United States Attorney's Office, not with the Internal Revenue Service. The Internal Revenue Service is not a party to this agreement and remains free to pursue any and all lawful remedies it may have. The Defendant agrees, however, as a special condition of supervised release (a) to provide a complete and accurate financial statement, under penalty of perjury, to the United States which shall identify all assets valued at $1,000.00 or more owned or held directly or indirectly by her, as well as all such assets transferred by her to any third parties since January 1, 2010, including the location of said assets and the identities and addresses of the third parties; and (b) to pay to the Internal Revenue Service all additional taxes, interest and penalties which the Internal Revenue Service may determine that she owes for the tax years 2003-2005, pursuant to the closing method

Mark E. Matthews, Esq.
November 15, 2011
Page 7

determined to be appropriate by the Internal Revenue Service. The Defendant understands that a failure to comply with any of the conditions of her supervised release may result in revocation of her release conditions, resulting in her reincarceration for all or part of the term of supervised release.

       13. If the Court orders the defendant to pay restitution to the IRS for the failure to pay tax, either directly as part of the sentence or as a condition of supervised release, the IRS will use the restitution order as the basis for a civil assessment. *See* 26 U.S.C. § 6201(a)(4)(C). Neither the existence of a restitution payment schedule nor the defendant's timely payment of restitution according to that schedule will preclude the IRS from administrative collection of the restitution-based assessment, including levy and distraint under 26 U.S.C. § 6331.

### Forfeiture

       14. The defendant understands that the court will, upon acceptance of her guilty plea, enter an order of forfeiture as part of her sentence, and that the order of forfeiture may include assets directly traceable to her offense, substitute assets and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offense. Specifically, the court will order the forfeiture of all property, real and personal, involved in the offenses and all property traceable to such property. The defendant agrees to consent to the entry of orders of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding the forfeiture at the change-of-plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

### Assisting the Government with Regard to the Forfeiture

       15. The defendant agrees to assist fully in the forfeiture of the foregoing assets. The defendant agrees to disclose all of her assets and sources of income to the United States, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including but not limited to executing any and all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are not sold, disbursed, wasted, hidden or otherwise made unavailable for forfeiture. The defendant further agrees that she will not assist any third party in asserting a claim to the forfeited assets in an ancillary proceeding and that she will testify truthfully in any such proceeding.

Mark E. Matthews, Esq.
November 15, 2011
Page 8

### Waiver of Further Review of Forfeiture

16. The defendant further agrees to waive all constitutional, legal and equitable challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The defendant also agrees not to challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this agreement, and will not assist any third party with regard to such challenge or review or with regard to the filing of a petition for remission of forfeiture.

### Waiver of Appeal

17. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

a) The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

b) The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows: (i) the Defendant reserves the right to appeal any term of imprisonment to the extent that it exceeds **forty-six (46)** months' imprisonment; (ii) and this Office reserves the right to appeal any term of imprisonment to the extent that it is below **thirty-seven (37)** months' imprisonment.

c) Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

d) The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the

above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Obstruction or Other Violations of Law

18. The Defendant agrees that she will not commit any offense in violation of federal, state or local law between the date of this agreement and her sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for her conduct by failing to acknowledge her guilt to the probation officer who prepares the Pre-sentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that she may not withdraw her guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Court Not a Party

19. The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Pre-sentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the pre-sentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw her guilty plea, and will remain bound to fulfill all of her obligations under this agreement. The Defendant understands that neither the prosecutor, her counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

Mark E. Matthews, Esq.
November 15, 2011
Page 10

### Entire Agreement

20. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: *[signature]*
Leo J. Wise
Jefferson M. Gray
Assistant United States Attorneys

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

__11-22-11__
Date

*[signature]* Christina Turley Knott
Christina Turley Knott

I am Christina Knott Turley's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement with her. She advises me that she understands and accepts its terms. To my knowledge, her decision to enter into this agreement is an informed and voluntary one.

__11-22-11__
Date

*[signature]*
Mark E. Matthews, Esq.

## ATTACHMENT A
## STATEMENT OF FACTS

### The Conspiracy to Defraud the National Security Agency

From in or about the year 1980 until October 2005, defendant Christina Turley Knott (Knott) was employed as the bookkeeper at the Bechdon Company (Bechdon), a manufacturing company located in Upper Marlboro, Maryland. Knott's father William Turley was the company's founder, principal owner, and president from 1966 until he resigned in November 2008. Knott's brother Donald Turley was also employed by Bechdon as a program manager and planner until 2008.

Bechdon was and is a manufacturer of precision machined products, including metal parts, plastic parts, sheet metal parts, and other specialty items for a variety of customers. As of the year 2007, Bechdon had produced various specialty order products, typically made of metal, for the National Security Agency (NSA) for more than 14 years.

Beginning in 2003, Bechdon did business with the NSA under an unclassified 5-year "time and materials" contract. Pursuant to that contract, Bechdon billed the NSA, based upon rates previously bid by Bechdon and approved by the NSA, for the actual amounts of materials and the number of employee work hours Bechdon used to produce the products ordered by the NSA.

Bechdon's employees recorded the time they spent working on jobs for the NSA on their daily time cards. Bechdon's accounting department then used these daily time cards to generate invoices that were submitted to the NSA for payment on these jobs. Until she was terminated by the company in October 2005, defendant Knott was

responsible for preparing and submitting Bechdon's invoices to the NSA using information generated from the employees' daily time cards.

Starting at least in or about the year 2003 and continuing until she was terminated from her employment with Bechdon in October 2005, defendant Knott participated with her father William and her brother Donald in a scheme to defraud the NSA by inflating the hours worked by various Bechdon employees on jobs ordered by the NSA. At some point in or about the year 2003, William Turley told defendant Knott and her brother Donald that he and she needed to co-ordinate together on any jobs on which they could put additional time. Thereafter, Donald Turley would tell defendant Knott when additional hours should be put on the invoices, and which employees to use. This would typically happen when a particular job was approaching completion, and Bechdon would soon be shipping the products to the NSA. Based upon the directions she received from her brother, defendant Knott instructed at least four Bechdon employees as to the number of additional hours they should add to the time they had worked on projects for the NSA. Defendant Knott then knowingly used the inflated time card totals to generate bills that were submitted by Bechdon to the NSA, which she likewise knew were overstated. Overall, between 1997 and the time the inflated billing ended in August 2008, Bechdon overbilled the NSA and was paid approximately $1.455 million for time its employees had not actually spent working on NSA projects. Because the largest dollar amount of the fraud occurred during the period 2003-2008, the government has calculated that more than $900,000 but less than $1 million of the fraudulent billings occurred during the period that defendant Knott was an active and

knowing member of the conspiracy, and defendant Knott does not contest this calculation.

### Subscribing to False Tax Returns

From 2003 through October 2005, defendant Knott used her position as the bookkeeper at the Bechdon Company to embezzle $4,640,422. Defendant Knott carried out this embezzlement by writing numerous checks made payable to herself that were drawn on Bechdon's bank accounts, first at Allfirst Bank and then later at M&T Bank after it acquired Allfirst. Defendant Knott deposited these checks into her personal account at the NASA Federal Credit Union. Defendant Knott's embezzlement was ultimately discovered by Bechdon in October 2005, at which time her employment was terminated.

For the tax year 2003, defendant Knott reported total income on line 22 of her U.S. Individual Income Tax Return (Form 1040) of $1,289,094.00. During the year 2003, defendant Knott wrote checks to herself drawn on Bechdon's bank account as part of her embezzlement that totaled $1,360,960.26, which she did not include in her total income of line 22 of her tax return. Based upon a tax rate of 35%, the tax loss suffered by the government on this unreported income for the year 2003 was $469,360.00. More than $10,000 of the money embezzled by defendant Knott in 2003 was derived from Bechdon's billing fraud against the NSA.

For the tax year 2004, defendant Knott reported total income on line 22 of her U.S. Individual Income Tax Return (Form 1040) of $1,552,956.00. During the year 2004, defendant Knott wrote checks to herself drawn on Bechdon's bank account as part

3

of her embezzlement that totaled $1,654,653.00, which she did not include in her total income of line 22 of her tax return. Based upon a tax rate of 35%, the tax loss suffered by the government on this unreported income for the year 2004 was $572,937.00. More than $10,000 of the money embezzled by defendant Knott in 2004 was derived from Bechdon's billing fraud against the NSA. The total tax loss for the 2003-2004 tax years is therefore $1,042,297.

During the first nine months of 2005, defendant Knott used her position as the bookkeeper for the Bechdon Company to embezzle an additional $1,367,928.17. In October 2005, defendant Knott's embezzlements were discovered; she was fired from her position with Bechdon; and she worked out a repayment agreement with Bechdon. Defendant Knott sought advice from tax counsel and based upon that advice, which was that her embezzlements during the year 2005 should not be considered income to her since they were subject to a repayment agreement, she did not report the amount of her embezzlements during 2005 on her tax return for that year.

Defendant Knott also embezzled an additional $672,803 from the Bechdon Company during calendar year 2002, which she likewise did not report on her tax return for that year and did not pay federal or state taxes upon.

Defendant Knott's 2003 U.S. Individual Income Tax Return was signed by her under the penalty of perjury. Defendant Knott requested that the accountant who prepared her 2004 Individual Income Tax Return electronically sign the 2004 tax return. Defendant Knott signed the Form 8879 for that return under the penalty of perjury.